UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

International Council of Shopping Centers, Inc.,

Plaintiff,

–v–

Info Quarter, LLC, *et al.*,

Defendants.

17-CV-5526 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

On February 9, 2018, Defendants moved to dismiss the second amended complaint ("SAC") in this case. Dkt. No. 47. For the following reasons, Defendants' motion is denied.

**I.   Background**

On a Rule 12(b)(6) motion, a court must take the facts alleged in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 74 (2d Cir. 2013). Accordingly, the following statement of facts is drawn from the second amended complaint.

Plaintiff International Council of Shopping Centers, Inc. ("ICSC") is a trade organization that works to further the interests of the shopping center industry. SAC at ¶ 1. ICSC has over 70,000 members in over 100 countries. SAC at ¶ 7. ICSC works to advance the shopping center industry through educational programs, meetings, and conferences. SAC at ¶ 7. ICSC holds an annual convention in Las Vegas, Nevada, known as "RECon." SAC at ¶ 8. ICSC has registered various trademarks on the words "ICSC" and "RECon." SAC at ¶ 1, 13. ICSC advertises RECon and other events through its website and through emails to its members and prior event attendees. SAC at ¶ 9.

1

Defendant Info Quarter, LLC ("Info Quarter") is a Delaware limited liability company. SAC at ¶ 5. Defendant Sankalp Shettar is citizen of India and is the proprietor of Defendant Info Quarter. SAC at ¶ 6. And "[u]pon information and belief, Mr. Shettar operates an offshore data mining business that sells inferior data products, including marketing contact lists, to primarily U.S. buyers and has used Info Quarter, LLC for the purpose of accepting payment from such buyers where the buyers require an IRS Form W-9 to pay a third-party. Further, upon information and belief, Mr. Shettar has maintained Info Quarter, LLC as an undercapitalized entity to avoid judgments by dissatisfied buyers and U.S. regulators." SAC at ¶ 41.

According to the second amended complaint, third parties, including Defendants, have "sought to capitalize on ICSC's brand recognition by contacting ICSC members and event attendees with sales solicitations." SAC at ¶ 11. This includes "spamming ICSC members and event attendees with emails offering to sell lists of ICSC event attendees and exhibitors, which the buyer would presumably use to market other goods and services to the attendees and exhibitors." SAC at ¶ 11. The emails sent by these third parties regularly use "ICSC" and "RECon" in the body and subject lines, and their use is not authorized. SAC at ¶ 12. ICSC regularly receives inquiries from its members and event attendees seeking clarification about whether ICSC is affiliated with these third party emails. SAC at ¶ 14. Some of these third party emails are sent by Defendants. SAC at ¶ 14.

On May 9, 2017, an ICSC member received an email from "Simon Williams" offering to sell "RECon – ICSC Leasing Mall & Trade Expo 2017 Attendee business contacts." SAC at ¶ 15. The subject line was "RECon – Attendees List." SAC at ¶ 15. "Further investigation revealed that Defendant Info Quarter, LLC was using Simon Williams to generate leads, which were followed up on by an agent or employee of Info Quarter, LLC identifying himself as

'Patrick Hopkins.' Patrick Hopkins continued using the same email thread begun by Simon Williams to sell a purported list of ICSC event attendees, which included the 'ICSC' and 'RECon' trademarks." SAC at ¶ 16. Patrick Hopkins was a "false identity being employed by Defendant Sankalp Shettar and/or his agents or employees to conduct business." SAC at ¶ 17.

According to the second amended complaint, "Defendants, either directly or through employees or agents, registered for an ICSC membership in order to access the ICSC member directory. The directory can only be accessed by ICSC members with a user name and password. Defendants then scraped the directory for member contact information, which they used to send spam emails to ICSC members offering to sell ICSC member and/or event attendee lists." SAC at ¶ 18. The registration process requires applicants to agree to ICSC's Terms and Conditions for Membership. SAC at ¶ 19. The Terms and Conditions requires members to refrain from using the "ICSC name in any matter that implies ICSC approval… [and the] ICSC name and logo may not be used in any other manner without the prior written consent of ICSC." SAC at ¶ 20. The Terms and Conditions also state: "The ICSC Membership Directory is proprietary…You are prohibited from copying, reproducing, selling or distributing the ICSC Membership Directory in whole or part." SAC at ¶ 21. Entities register through ICSC's website. *See* SAC at ¶ 22. Defendants also registered for ICSC events and agreed to the Event Registration Terms and Conditions. SAC at ¶¶ 26, 72. By accessing the membership and event registration through the ICSC website, Defendants agreed to the website's Terms and Conditions. SAC at ¶ 30 ("By accessing and using the Web Site, User accepts and agrees to be bound, without modification, limitation or qualification, by these Terms.").

Plaintiff alleges six causes of action in the second amended complaint: (1) Trademark Infringement under Section 32(1) of the Lanham Act (2) False Designation of Origin and False

Representations in Commerce Under Section 32(1) of the Lanham Act (3) Unfair Competition Under Section 43(a) of the Lanham Act (4) Common Law Unfair Competition and Trademark Infringement (5) Unjust Enrichment and (6) Breach of Contract. SAC at ¶¶ 47-74.

On February 9, 2018, Defendants filed a motion to dismiss the second amended complaint. Dkt. No. 47. Defendants argue that they are not subject to personal jurisdiction in New York, Plaintiff has failed to state a claim, and Plaintiff has failed to state a cause of action against Defendant Shettar. *See* Dkt. No. 48, Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Br."). On February 23, 2018, Plaintiff filed an opposition to Defendants' motion. Dkt. No. 51, Memorandum of Law in Opposition to the Motion to Dismiss ("Pl. Br."). On March 2, 2018, Defendants filed a reply memorandum of law in support of their motion. Dkt. No. 52. And on March 16, 2018, Plaintiff filed a sur-reply in opposition to Defendants' motion. Dkt. No 55.

**II.    Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Pleadings that contain no more than conclusions are not entitled to the assumption of truth otherwise applicable." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (citations omitted).

In resolving a motion to dismiss, review is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits,

4

and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A district court may also consider "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## III. Discussion

### a. Personal Jurisdiction

Defendants argue that they should be dismissed because they are not subject to personal jurisdiction in New York. *See* Def. Br. at 6-10. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 167 (2d Cir. 2013). On this procedural posture, the Court construes the pleadings and any supporting materials in the light most favorable to the plaintiff, resolving any doubts in favor of jurisdiction. *Id.* The plaintiff may satisfy the requirement of a *prima facie* showing by providing an averment of facts that, if credited, would suffice to establish jurisdiction. *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted); *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). The Court need not, however, accept a legally conclusory assertion or draw argumentative inferences. *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 757 (S.D.N.Y. 2004) (citations and quotations omitted).

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). "The Second Circuit regularly enforces forum selection clauses as long as the existence of the clause was reasonably communicated to the parties." *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 377 (S.D.N.Y. 2010), *aff'd in part*, 647 F.3d 472 (2d Cir. 2011), *and aff'd in part*,

435 F. App'x 31 (2d Cir. 2011) (citations and quotations omitted). The party seeking enforcement of the clause must demonstrate that: "(1) the clause was reasonably communicated to the party resisting enforcement, (2) the clause was mandatory and not merely permissive, and (3) the claims and parties involved in the suit are subject to the forum selection clause." *Id.* at 376. Additionally, "[w]here an agreement contains a valid and enforceable forum selection clause...it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process. This is so because an enforceable forum selection clause amounts to consent to personal jurisdiction." *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 581 (S.D.N.Y. 2016) (citations and quotations omitted). *See Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010) (collecting cases); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, n.14, (1985) ("the personal jurisdiction requirement is a waivable right...[where] forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process.") (quotations omitted).

Here, Defendants consented to personal jurisdiction through a valid forum-selection clause. Plaintiff's website contains a browsewrap forum selection clause[1] in the website's Terms and Conditions. *See* SAC at ¶ 32. The Terms and Conditions state: "By using the Web Site, User agrees that the *exclusive forum* for any claims or causes of action arising out of User's use of the Web Site shall be either any state court for or within New York County in the State of New York and *the United States District Court for the Southern District of New York.*" *Id.* (emphasis added). The Terms and Conditions also state that "User hereby irrevocably waives, to

---

[1] A browsewrap agreement is when "the website will contain a notice that—by merely using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 395 (E.D.N.Y. 2015) (quotation omitted).

the fullest extent permitted by law, any objection which User may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum." Dkt. No. 51-1 at 29. Thus, factors two and three of enforcing the forum selection clause are easily satisfied: the forum selection clause is mandatory, and the claims at issue in this case involve a breach of contract and a trademark dispute arising out of Defendants' alleged use of the ICSC website.

The remaining issue is whether or not the clause was reasonably communicated to the Defendants. Defendants argue they were not on notice of the forum selection clause. Def. Br. at 16. Browsewrap agreements are typically only enforced in cases that "have involved users who are businesses." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012). Defendant Info Quarter is a sophisticated party, second amended complaint at ¶ 22, and is "one of the leading data information service organizations in the business of providing premier email lists." Dkt. No. 50 at ¶ 6. Defendant Info Quarter acknowledges that it conducts "some of its marketing via operation of" its own website. *Id.* at ¶ 7. Defendant Shettar is the owner of Info Quarter. SAC at ¶ 6. Accordingly, accepting the allegations as true, Defendants were on notice, or constructive notice, of ICSC's website Terms and Conditions, and the forum selection clause it contained. By allegedly accessing Plaintiff's website for purposes of registering for ICSC membership and events, Defendants consented to the forum selection clause.

Defendants argue that the forum selection clause cannot confer personal jurisdiction. Dkt. No. 52 at 3-4. Defendants cite *Techo-TM, LLC v. Fireaway, Inc.*, 123 A.D.3d 610 (2014) which states: "However, while New York recognizes consent as a basis for personal jurisdiction (*see* CPLR 301; Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C301:1), it does not recognize consent as a basis for long-arm jurisdiction (*see*

*Graham v New York City Hous. Auth.*, 224 AD2d 248 [1st Dept 1996])." Defendants are incorrect. The *Graham* Court was discussing *subject matter jurisdiction*, not personal jurisdiction. 224 A.D.2d at 248 ("Moreover, since subject matter jurisdiction cannot be conferred by consent..."). Long-arm jurisdiction *is* a form of personal jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 289 (1980). And parties can consent to personal jurisdiction. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *D.H. Blair*, 462 F.3d at 103. The clause here does that. Accordingly, the Court has personal jurisdiction over Defendants.

### b. Defendant Shettar

Defendants argue that Defendant Shettar should be dismissed for failure to state a claim against him under Rule 12(b)(6). Def. Br. at 17-18. Plaintiff argues that under an alter-ego theory, it has sufficiently alleged a claim against Defendant Shettar. Pl. Br. at 23-25. A court can "disregard the corporate form and impose personal liability to pierce the corporate veil...to prevent fraud or to achieve equity." *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979) (quotation omitted). New York law requires the party seeking to pierce a corporate veil to make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). With respect to the first prong of veil-piercing, courts consider a number of factors in assessing whether a corporation has been completely dominated, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion

shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997).

Additionally, "New York courts have recognized that a veil-piercing theory often necessitates a fact laden inquiry and thus is unsuited for resolution on a pre-answer, pre-discovery motion to dismiss. *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 799 (S.D.N.Y. 2017) (citations and quotations omitted). "Accordingly, while it is generally not sufficient, at the pleading stage, to make conclusory allegations of control, setting forth some examples of alleged domination may provide sufficiently specific factual allegations to support an alter ego claim and result in denial of the motion to dismiss." *Id.* (quotations omitted).

Although discovery may yield a different result, Plaintiff has pled sufficient facts on this front for its claims as to Defendant Shettar to survive a motion to dismiss on a veil piercing theory. The second amended complaint sufficiently alleges several of the *Freeman* factors. Plaintiff alleges that Defendant Shettar is the proprietor of Defendant Info Quarter. SAC at ¶ 6. And Defendant Shettar concedes that he is "the sole member of Info Quarter." Dkt. No. 50 at ¶ 4. Plaintiff alleges that "[u]pon information and belief, Mr. Shettar operates Info Quarter, LLC as an alter ego by transferring funds in and out of personal and corporate bank accounts, by using corporate funds and property for personal purposes, by failing to sufficiently capitalize the entity, by failing to observe organizational formalities, [and] by sharing common office space and phone numbers with the entity...." SAC at ¶ 40. Plaintiff also alleges that "upon information and belief, Mr. Shettar operates an offshore data mining business...to primarily U.S. buyers and has used Info Quarter, LLC for the purpose of accepting payment from such buyers where the buyers require an IRS Form W-9 to pay a third-party. Further, upon

9

information and belief, Mr. Shettar has maintained Info Quarter, LLC as an undercapitalized entity to avoid judgments by dissatisfied buyers and U.S. regulators." SAC at ¶ 41. These allegations sufficiently plead that Defendant Shettar exercises complete domination over Info Quarter with respect to the issues in this case.

Plaintiff has also sufficiently alleged that Defendant Shettar's use of Info Quarter was for the purpose of committing trademark infringement and breach of contract. *See* SAC at ¶¶ 41, 47-74. Such allegations are sufficient to support a veil-piercing theory of liability as to Defendant Shettar at this stage of the litigation. Accordingly, Defendants' motion to dismiss the claims against Defendant Shettar is denied.

### c. Trademark Infringement

Defendants argue that Plaintiff's trademark infringement claims should be dismissed because Plaintiff has failed to allege that Info Quarter's use of ICSC trademarks is anything other than nominative fair use. Def. Br. at 11-12. Nominative fair use allows "a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010).

However, courts have routinely rejected nominative fair use arguments at the motion to dismiss stage because of its inherently factual inquiry. *See Grand v. Schwarz*, 2016 WL 2733133, at *4 (S.D.N.Y. May 10, 2016) ("evaluating [nominative fair use] on a motion to dismiss is inappropriate"); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, 2008 WL 2696168, at *11 (S.D.N.Y. July 7, 2008); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 902 (S.D.N.Y. 2016); *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006). Nominative fair use is a "merits issue[] to be determined on a

10

summary judgment motion or at trial." *Manigault v. ABC Inc.*, 2018 WL 2022823, at *4 (S.D.N.Y. Apr. 12, 2018). Accordingly, Defendants' motion to dismiss the trademark infringement claims based on a nominative fair use defense is denied.

### d. Breach of Contract

Defendants argue that Plaintiff's breach of contract claim should be dismissed because Plaintiff has not adequately alleged a binding contract, nor has Plaintiff adequately alleged a breach of contract. Def. Br. at 12-17. Defendants' argument that Plaintiff has not adequately alleged a binding contract is essentially that Defendants did not have fair notice of the contracts that Plaintiff has accused them of breaching. *See id.* at 16 ("Info Quarter does not have fair notice of the grounds upon which this claim rests."). As explained above, Defendants had actual or constructive notice of the ICSC's website Terms and Conditions. *See supra* Part III.a. And for the same reasons, Defendants had actual or constructive notice of Plaintiff's Membership Terms and Conditions and the Event Registrant Terms and Conditions, which were contained on the ICSC website. *See supra* Part III.a; SAC at ¶¶19, 26. Accordingly, Defendants' argument that Plaintiff has not adequately alleged a binding contract fails.

What remains is Defendants' claim that Plaintiff has not sufficiently stated a breach of contract. To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract, (2) the adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages. *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 41-42 (2d Cir. 2005). "To plead a breach of contract, the plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Gloria D. Wiseman, Plaintiff, v. ING Groep, N.V. et al.*, 2017 WL 4712417, at *4 (S.D.N.Y. Sept. 28, 2017).

For the following reasons, Plaintiff has sufficiently stated a claim for breach of contract.

### i. Existence of a Contract

Plaintiff sufficiently alleges that three contracts exist: the Terms and Conditions for ICSC membership, and the Terms and Conditions for using the ICSC website, and the Terms and Conditions for event registration. Plaintiff states the "ICSC's terms and conditions for members, event registrants, and website users constitute valid and binding contracts. The terms for members and event registrants were assented to as part of the registration process, which included an offer of registration in exchange for payment, an acceptance by Defendants when they completed the registration process and paid, and consideration going both ways. Website users were offered access to ICSC's website in exchange for agreeing to be bound by the website terms of use, which offer was accepted by the users' accessing the site." SAC at ¶ 72.

The second amended complaint explains all three contracts in greater detail. First: "ICSC's online membership registration process requires applicants to agree to ICSC's Terms and Conditions for Membership, which in turn bind the members to 'observe and abide by these ICSC Membership Terms and Conditions and by such additional terms or conditions as amended by ICSC from time to time in accordance with ICSC's Bylaws (the "Agreement").'" SAC at ¶ 19. Second: "ICSC's event registration process entails the explicit referencing and incorporation of the ICSC's Terms, Conditions and Rules for Event Registrants through a message that appears on the site during registration. Those terms in turn bind the registrants to 'observe and abide by these Terms and Conditions and Rules and by such additional terms or conditions made by ICSC or its affiliates and communicated to the Registrant from time to time which are hereby incorporated into this Agreement.'" SAC at ¶ 26. And third: "ICSC's homepage displays a hyperlink at the bottom, which leads to a page that contains ICSC's General

Website Terms and Conditions, which in turn provide: 'By accessing and using the Web Site, User accepts and agrees to be bound, without modification, limitation or qualification, by these Terms.'" SAC at ¶ 30.

Based on these allegations, Plaintiff has sufficiently alleged that there were three contracts that existed. While the entirety of the contracts were not included in the second amended complaint, they were incorporated by reference. That is enough for the Court to consider them. *McCarthy*, 482 F.3d at 191.

### ii. Adequate Performance of the Contract by the Plaintiff

Plaintiff has also adequately alleged that it performed the contracts. Plaintiff alleges that "ICSC performed all of its obligations under the agreements by, among others, providing membership and/or event services, and by providing Defendants access to its site." SAC at ¶ 73. This is sufficient to survive a motion to dismiss. *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys.*, LLC, 861 F. Supp. 2d 344, n.6 (S.D.N.Y. 2012) (explaining that cases dismissing breach of contract claims for failure to allege performance by the Plaintiff involve complaints where the complaint "failed to make even a general allegation that plaintiff had performed its obligations under the contract.") (quotation omitted).

### iii. Breach of the Contract by the Defendant

Defendants argue that Plaintiff has not adequately alleged a breach. Def. Br. at 12-13. Defendants are incorrect. Plaintiff sufficiently alleges that Defendants breached all three Terms and Conditions by accessing the ICSC website and "scraping ICSC's member and event registrant contact data and using ICSC's marks without authorization." SAC at ¶ 73. Defendants argue that the Simon Williams email offered recipients a RECon attendee list whereas the Membership Terms and Conditions only prohibits members from copying or

reproducing the membership directory. Def. Br. at 12-13. Because these two are different, Defendants argue that Plaintiff has not adequately alleged a breach of the Membership Terms and Conditions. *See id.* However, the Event Registration Terms and Conditions also prohibits sharing of contact data and using the ICSC mark. *See* SAC at ¶¶ 72-73. The specific terms breached are incorporated into the second amended complaint by reference. *See* SAC at ¶¶ 23-28, 34. *See also* Dkt. No. 51-1 at 13, 26-27, 37.

Defendants argue that Plaintiff has not specified "who signed the contract, and—most importantly—when," which is needed to assess whether or not there was a breach. Def. Br. at 14. That is not required at the motion to dismiss stage. As Plaintiff explains, ICSC is unable to identify, at this stage, what identity or identities of Defendants actually accessed ICSC's website, membership registration, and event registration. Pl. Br. at 20. Discovery will provide greater clarity on these issues. All that is required at this stage is that Plaintiff plead enough information that makes the inference of Defendants' culpability plausible. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Plaintiff has sufficiently alleged that here. *See* SAC at ¶ 18 ("Upon information and belief, Defendants, either directly or through employees or agents, registered for an ICSC membership in order to access the ICSC member directory"); SAC at ¶¶ 25, 42. *See also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions…does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant…"). Accordingly, Plaintiff has sufficiently alleged a breach of the three contracts.

    **iv. Damages**

Although a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference" that he suffered damages as a result of the breach, *Iqbal*, 556 U.S. at 678, it need not, at this stage, "specify the measure of damages nor plead ... [specific] proof of causation." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 516 (S.D.N.Y. 2015) (quotation omitted). The exact magnitude of damages caused by the breach is properly evaluated at the summary judgment stage, not the motion to dismiss stage. *See Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (alleging a speculative measure of damages in a breach of contract action does not justify dismissal under Rule 12(b)(6)). Here, Plaintiff alleges that ICSC suffered damages as a result of Defendants' breach, including diminution of the value of its brand. SAC at ¶ 74. This is sufficient for Plaintiff to survive the motion to dismiss. *See LivePerson*, 83 F. Supp. 3d at 516.

For all of these reasons, Defendants' motion to dismiss Plaintiff's breach of contract claim fails.

### e. Unjust Enrichment

Because Defendants do not make any arguments to dismiss Plaintiff's unjust enrichment claim, the claim is not dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is DENIED. This resolves Docket Number 47. The Court will schedule an initial pretrial conference by separate order.

SO ORDERED.

Dated: September 7, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge